UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NUMBER** |
| | : | |
| | : | **3:09-cr-00060 (VLB)** |
| v. | : | |
| | : | **NOVEMBER 4, 2019** |
| **BRIAN SLUTZKIN** | : | |
| | : | |

**MEMORANDUM OF DECISION DENYING FIRST STEP ACT
MOTION FOR IMMEDIATE RELEASE OR RESENTENCING [ECF NO. 62]**

Petitioner Brian Slutzkin ("Mr. Slutzkin" or "defendant") brings this motion for relief under Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("First Step Act"), arguing that he is statutorily eligible for a sentence reduction and that keeping him incarcerated any longer would serve no purpose. [ECF No. 62 at 1-4].

For the following reasons, Mr. Slutzkin's Motion for Sentence Reduction is DENIED.

## Background

On March 13, 2009, Mr. Slutzkin appeared in the United States District Court for the District of Connecticut, waived his right to indictment, and, pursuant to a plea agreement, pled guilty to a one-count Information charging him with intent to distribute five grams or more of cocaine base, or crack cocaine, in violation of 21 U.S.C. §§ 84a1(a)(1), (b)(1)(B). [ECF Nos. 1, 3].

In the Plea Agreement, the Parties agreed that Mr. Slutzkin had a base offense level of 24 because the amount of narcotics attributable to Mr. Slutzkin was at least 5 grams but less than 20 grams of cocaine base. To reflect the

offense characteristics, two levels were added because a dangerous weapon was possessed, and three levels were subtracted for acceptance of responsibility. [ECF No. 3 at 5-6]. The Plea Agreement included a "Stipulation of Offense Conduct" in which the Parties stipulated that Mr. Slutzkin "knowingly and intentionally possessed with the intent to distribute 15.7 grams of . . . cocaine base ('crack'), . . . [and] possessed a dangerous weapon at the time he possessed and intended to distribute cocaine base." *Id.* at 12.

The Presentence Report calculated Mr. Slutzkin's Criminal History Category as V, based on the following offenses:

- An April 25, 2003 conviction in Connecticut Superior Court for the sale of narcotics.[1] [ECF No. 58-2 ¶ 32]. Mr. Slutzkin was sentenced to five years' imprisonment, suspended, and five years' probation. *Id.*

- An October 25, 2007 conviction in Connecticut Superior Court for breach of peace for assaulting his girlfriend by grabbing her throat and throwing her to the floor.[2] *Id.* ¶ 33. Mr. Slutzkin was sentenced to six months' imprisonment, suspended, and 18 months conditional discharge. *Id.*

---

[1] The narrative for this conviction notes that Mr. Slutzkin resisted arrest and was incarcerated from July 12, 2002 until November 7, 2002, during which time he received two prison disciplinary infractions, one for fighting and one for threats. [ECF No. 58-2 ¶ 32].

[2] The narrative section for this conviction notes that the victim had a bruised neck and a bump on her head. *Id.* ¶ 33. It also notes that when interviewed Mr. Slutzkin yelled at the interviewing officer and lied, saying he had never assaulted his girlfriend. *Id.*

- **A December 18, 2008 conviction in Connecticut Superior Court for having a weapon in a motor vehicle.[3]** *Id.* ¶ 34. **Mr. Slutzkin was sentenced to one years' imprisonment, to run concurrently with the following conviction.** *Id.*

- **A separate December 18, 2008 conviction in Connecticut Superior Court for two counts of assault in the first degree and for having a pistol with no permit.** *Id.* ¶ 35.[4] **Mr. Slutzkin was sentenced to 10 years' imprisonment on each count of assault, and two years' imprisonment on the weapon charge; all sentences were imposed concurrently.** *Id.*

**These offenses led to eight Guideline criminal history points, and two points were added because Mr. Slutzkin was on probation when he was arrested for the federal offense.** *Id.* ¶ 36. **Mr. Slutzkin 's convictions placed him in criminal history category V,** *id.*, **which when combined with a total offense level of 23,** *id.* ¶ 67, **resulted in a recommended Sentencing Guideline range of 84-105 months,** *id.*, **with a mandatory minimum sentence of 60 months,** *id.* ¶ 66, **and a minimum of four years of supervised release,** *id.* ¶ 69, **to run concurrently or consecutively to Mr. Slutzkin's December 18, 2008 state sentence at the Court's discretion.** *Id.*

---

[3] The narrative for this conviction notes that when he was arrested by police on July 6, 2006, they found marijuana and a semi-automatic pistol. *Id.* ¶ 34.

[4] The narrative for this conviction notes that the events leading to these convictions, namely a shooting while distributing drugs that occurred on November 2, 2007, are the same ones that form the basis for Mr. Slutzkin's federal criminal charges. ¶ 35. These events are described in more detail, *infra*. It also notes once Mr. Slutzkin was incarcerated after his arrest, he was transferred to Northern Correctional Institution due to gang affiliation. *Id.* He also received disciplinary infractions for gang affiliation (twice), interfering with safety and security, and fighting prior to sentencing by the Court. *Id.* ¶ 32.

3

At his June 26, 2009, sentencing, the Court imposed a within-Guideline sentence of 84 months of imprisonment to run consecutively to Mr. Slutzkin's state sentence, and five years' supervised release." [ECF Nos. 18, 19].

On July 6, 2009, Mr. Slutzkin filed a timely notice of appeal. [ECF No. 20]. On appeal, Mr. Slutzkin argued that "(1) it was error to add three criminal history points for the December 2008 state sentence pursuant to U.S.S.G. § 4A1.1(a); (2) it was error to add two criminal history points for commission of the instant federal offense while on probation pursuant to U.S.S.G. § 4A1.1(d); and (3) the district court improperly imposed consecutive, rather than concurrent, sentences pursuant to U.S.S.G. § 5G1.3." *United States v. Slutzkin*, 382 F. App'x 65, 67 (2d Cir. 2010). The Second Circuit, via Summary Order, "reject[ed] all of Slutzkin's arguments and affirm[ed] the judgment of the district court." *Id.*

On December 17, 2014, Mr. Slutzkin filed a civil habeas petition under 28 U.S.C. §2255. No. 14-cv-1889 (VLB), [ECF No. 1]. Mr. Slutzkin's Petition requested that the Court reduce his offense level by two based on Amendment 782 to the United States Sentencing Guidelines, which effected a 2-level reduction in the base offense level of certain drug offenses carrying a mandatory minimum sentence. *Id.* at 6 ("On Nov 1st 2014 a 2 pt reduction was applied to all drug federal offenses.").

On April 15, 2015, Mr. Slutzkin filed a motion requesting the same relief in this case. No. 3:09-cr-00060 (VLB), [ECF No. 43]. In that motion, Mr. Slutzkin requested that "the Court enter an amended judgment in his case pursuant to 18 U.S.C. § 3582(c)(2) as it implements Amendment 782 to the United States

4

Sentencing Guidelines. Specifically, Mr. Slutzkin asks this Court to reduce his sentence of imprisonment from 84 months to 60 months." *Id.* at 1.

On July 20, 2015, the Court denied Mr. Slutzkin's civil habeas petition as moot in light of his motion for the exact same relief in this case. No. 14-cv-1889 (VLB), [ECF No. 4 ("Petitioner's motion to vacate seeks a two point reduction in his sentence based on Amendment 782 to the United States Sentencing Guidelines. *See* [Dkt. #1 at 6]. On April 15, 2015, Petitioner filed a motion seeking the exact same relief in the related matter, *U.S. v. Slutzkin*, No. 09-CR-60 (VLB) (D. Conn. filed Mar. 9, 2009). *See* [Dkt. #43]. As Petitioner's motion in that earlier-filed case is presently pending, Petitioner's motions in this separate action are wholly duplicative, and the action is therefore dismissed.")].

The Probation Office's "Amendment 782 Addendum to the Presentence Report" noted that since his federal sentencing in June 2009, Mr. Slutzkin had received the following disciplinary citations and sanctions while in state incarceration:

- "8/25/2014, SRG Affiliation, 15 days punitive segregation, loss of community and telephone privileges for 45 days, loss of recreation for 10 days;"
- "7/30/2014, SRG Affiliation, 7 days punitive segregation, loss of community and telephone privileges for 30 days, loss of recreation for 10 days;"
- "3/4/2014, SRG Affiliation, 6 days punitive segregation, loss of recreation for 6 days, loss of social visiting and social correspondence privileges for 20 days;"

5

- "8/28/2013, Security Tampering, loss of recreation for 10 days, loss of community and social correspondence privileges for 15 days;"
- "7/23/2013, SRG Affiliation, 7 days punitive segregation, loss of recreation for 10 days, loss of social visiting and social correspondence privileges for 30 days;"
- "6/6/2013, Flagrant Disobedience, 1 day in punitive segregation and loss of recreation for 10 days;"
- "5/31/2013, Interfering with Safety/Security of Institution, 7 days in punitive segregation, loss of recreation for 10 days, loss of social visiting and community privileges for 30 days;"
- "1/29/2013, SRG Affiliation, 15 days in punitive segregation, loss of recreation for 10 days, loss of social visiting privileges for 60 days, loss of community privileges for 90 days;"
- "1/9/2013, Fighting, 7 days punitive segregation, loss of recreation for 10 days, loss of community and social correspondence privileges for 30 days;"
- "12/30/2012, Fighting, 7 days punitive segregation, loss of recreation for 10 days, loss of community and social visiting privileges for 30 days;"
- "4/27/2012, Class B Contraband, loss of recreation for 5 days, confined to unit for 15 days; and"
- "4/9/2010, SRG Safety Threat, 7 days in punitive segregation, loss of social visiting and community privileges for 30 days."

No. 3:09-cr-00060 (VLB), [ECF No. 35].

On July 23, 2015, the Court recalculated Mr. Slutzkin's sentencing guideline range to 60 months, based on the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(B), *id.* [ECF Nos. 45, 51], but denied Mr. Slutzkin's motion to reduce his Sentence pursuant to Amendment 782. *Id.* [ECF Nos. 45, 51 The Court articulated its reasons, stating "[w]hen applying the factors listed in 18 USC 3553(a) to determine whether to reduce the defendant's original sentence the Court may consider post-sentencing conduct. The defendant's behavior in prison demonstrates a continued need to protect the public and a lack of respect for the law.".

On August 6, 2015, Mr. Slutzkin filed a timely notice of appeal. *Id.* [ECF No. 47]. In his appeal brief Mr. Slutzkin argued that "[g]iven that the same judge had previously sentenced Mr. Slutzkin to the bottom end of the then-applicable Guidelines range, this refusal to grant any relief whatsoever, leaving in place what is now an above-Guidelines sentence is inexplicable and unjustified." Brief of Appellant at 8, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Nov. 13, 2015).

On January 25, 2016, Mr. Slutzkin's counsel, Federal Public Defender Dierdre A. Murray, filed a motion to withdraw Mr. Slutzkin's principal brief and to file a brief in support of her motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), because after reviewing the Court's Statement of Reasons supporting the Court's denial of Amendment 782 relief, No. 3:09-cr-00060 (VLB), [ECF No. 51], dated December 2, 2015, which was not available when she filed Mr. Slutzkin's original appeal brief, Attorney Murray "determined that no non-frivolous grounds for appeal remain." Motion to Withdraw at 1, *United States*

7

*v. Slutzkin*, No. 15-2524 (2d Cir. Jan. 25, 2016). The next day the Second Circuit granted Attorney Murray's motion. *Id.*, [ECF No. 45]. Following that, Attorney Murray filed an "*Anders* Brief" arguing that "the issues potentially presented for appellate review [we]re without merit and [we]re frivolous." Brief of Counsel for Appellant in Support of Motion to Withdraw at 7, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Jan. 27, 2016).

On April 27, 2016, the Government moved for summary affirmance, arguing that "[t]he government agrees with Slutzkin's counsel's conclusion that there are no non-frivolous issues remaining for Slutzkin to pursue on appeal," and that "the district court (1) appropriately determined that Slutzkin was eligible for a sentence reduction, (2) acted well within its discretion in denying such a reduction, and (3) provided an adequate explanation for that denial." Brief of Appellee at 4-5, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Apr. 27, 2016).

On July 7, 2016, the Second Circuit, via a one-page Order, granted Attorney Murray's Motion to Withdraw and granted the Government's Motion for Summary Affirmance. *Id.* [ECF No. 71 ("Deirdre A. Murray, counsel for Appellant, moves for permission to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the Government moves for summary affirmance. Upon due consideration, it is hereby ORDERED that the motions are GRANTED.")]. The Second Circuit also denied Mr. Slutzkin's follow-on motion for reconsideration, *id.* [ECF No. 83], and his follow-on motion for rehearing *en banc*. *Id.* [ECF No. 88].

Mr. Slutzkin filed a second habeas petition seeking a sentence reduction on March 6, 2018. No. 3:14-cv-01889 (VLB), [ECF No. 5]. In that petition, Mr. Slutzkin

8

argued that his sentence should be vacated, set aside, or corrected because the Court improperly applied a two-point sentencing enhancement for possession of a firearm pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(b)(1). Alternatively, Mr. Slutzkin argued that the Court should vacate his sentence due to ineffective assistance of counsel before the district court, in that his sentencing counsel's failure to adequately challenge the imposition of the Section 2D1.1(b)(1) enhancement as improper. *Id.* at 4-8.

On August 3, 2018, in this case, Mr. Slutzkin filed a Motion to Reduce Sentence pursuant to Amendment 750 of the Sentencing Guidelines. No. 3:09-cr-00060 (VLB), [ECF No. 56].

In its "Amendment 750 Addendum to the Presentence Report," the Probation Office determined that Mr. Slutzkin was not eligible for a sentence reduction because such a reduction was "not authorized" unless it "ha[d] the effect of lowering the defendant's applicable guideline range." Amendment 782 had previously reduced his recommended guideline range to 60 months and the Court had previously declined to exercise its discretion to reduce his sentence based on that reduction. Probation concluded "Mr. Slutzkin already received the benefit of consideration of an Amendment 750 reduction because it was encompassed within the guidelines calculated during consideration of his Amendment 782 request." [ECF No. 58 at 4-5]. The Probation office also noted that in addition to the prison disciplinary infractions detailed in its Amendment 782 Addendum to the Presentence Report, Mr. Slutzkin had received the following disciplinary citations and sanctions during state incarceration:

9

- "7/7/2015, Security Tampering, 10 days' punitive segregation, loss of telephone and social visit privileges for 30 days, loss of recreation for 10 days"
- "7/7/2015, Disobey Direct Order, 5 days' punitive segregation, loss of telephone privileges for 30 days, loss of recreation for 5 days"
- "7/18/2015, Conspiracy to Commit Assault, 7 days' punitive segregation, loss of social visits and commissary privileges for 30 days, loss of recreation for 10 days"
- "8/4/2015, SRG Affiliation, 7 days' punitive segregation, loss of social visits for 40 days, loss of commissary privileges for 20 days and loss of recreation for 10 days"
- "10/8/2015, SRG Affiliation, 7 days' punitive segregation, loss of commissary privileges for 30 days, loss of social correspondence privileges for 15 days and loss of recreation for 10 days" and
- "10/22/2015, Security Tampering, 4 days' punitive segregation, loss of telephone privileges for 30 days, loss of recreation for 10 days."

*Id.* [ECF No. 58 at 3-4].

The PSR Addendum also noted that on November 4, 2015, Mr. Slutzkin completed his state imprisonment and "was released to federal authorities." *Id.* at 2. While in federal prison, Mr. Slutzkin had received the following additional disciplinary citations and sanctions:

- "9/7/2017, Mail Abuse / Disrupt Monitoring, loss of 27 days' good conduct time, 15 days' disciplinary segregation, loss of email for 3 months"

- "9/7/2017, Giving/Accepting Money without Authorization, loss of 14 days' good conduct time and loss of commissary privileges for 2 months"

- "2/22/2018, Being Absent from Assignment, loss of commissary privileges for 30 days" and

- "4/9/2018, Possession of Drugs/Alcohol, loss of 41 days good conduct time, 20 days' disciplinary segregation and loss of phone and email privileges for 4 months. . . . Records note that [the] drugs [were], specifically suboxone and amphetamine."

*Id.* [ECF No. 58 at 4].

The Government agreed that Mr. Slutzkin was not eligible for a sentence reduction pursuant to Amendment 750, and also argued that "the defendant's continued disciplinary citations, together with the offense of conviction and his prior convictions, evidence that a reduction is not warranted given the public safety concerns he presents and his demonstrated lack of respect for the law." *Id.* [ECF No. 59 at 6].

On October 9, 2019, the Court denied Mr. Slutzkin's Motion to Reduce Sentence pursuant to Amendment 750 of the Sentencing Guidelines. *Id.* [ECF Nos. 67, 68]. The Court found that Mr. Slutzkin was not eligible for a sentence reduction because Amendment 750 did not have the effect of lowering his sentencing guideline range, and found that "[e]ven if Defendant was eligible for a sentence reduction based on Amendment 750, the Court would still DENY Defendant's petition because the number and severity of the disciplinary infractions Defendant has committed in prison since my previous Order on

sentence reduction, Dkts. 45, 51, demonstrates a continued need to protect the public and a lack of respect for the law. 18 U.S.C. Sections 3553(a)(2)(A) 3553(a)(2)(C)." *Id.* [ECF No. 68].

On October 15, 2019, the Court also denied Mr. Slutzkin's second civil habeas petition, finding that his "two-level firearm sentencing enhancement was entirely proper," and that therefore "Mr. Slutzkin's counsel could not have been ineffective for failing to object to it." No. 3:14-cv-01889-VLB [ECF No. 11 at 13].

On April 11, 2019, Mr. Slutzkin filed the instant Motion for Immediate Release or Re-Sentencing under the First Step Act. *Id.* [ECF No. 62]. Importantly as regards the motion *sub judice*, in response the Probation Office filed a "First Step Act of 2018 Addendum to the Presentence Report." *Id.* [ECF No. 63]. In the Addendum, the Probation Office, in addition to the prison disciplinary infractions noted previously, noted that Mr. Slutzkin had received the following additional disciplinary citations and sanctions:

- "12/1/2018, Destr[uction of]Property $100 or Less, loss of commissary for 30 days"
- "11/24/2018, Destr[uction of] Property $100 or Less (Cut mattress), loss of email for 15 days."

*Id.* [ECF No. 63 at 5].

## Legal Standard

18 U.S.C. § 3582(c) provides various avenues for a court to allow a "modification of an imposed term of imprisonment." Subsection 3582(c)(1)(B) provides that "the court may modify an imposed term of imprisonment to the

extent otherwise expressly provided by statute . . . ." The statute in question in resolving this motion is the First Step Act.

Section 404 of the First Step Act first defines that a "'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) ["Fair Sentencing Act"], that was committed before August 3, 2010." First Step Act Section 404(a). The First Step Act then provides the Court with direction on how to proceed, making the Fair Sentencing Act retroactive: "A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act Section 404(b). Finally, the First Step Act confers discretion to *not* reduce a sentence on a sentencing court if doing so is unwarranted: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act Section 404(c).

The Fair Sentencing Act, *inter alia*, increased the amount of crack cocaine necessary to impose mandatory minimum sentences by increasing from 50 to 280 grams the amount of crack cocaine needed to incur a ten-year mandatory minimum and increasing from 5 to 28 grams the amount of crack cocaine needed to incur a five-year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1). Fair Sentencing Act Section 2(a).

Under Federal Rule of Criminal Procedure 43, a "defendant need not be present" when a court adjudicates a "proceeding involve[ing] the correction or reduction of a sentence under . . . 18 U.S.C. §3582 (c)."  Fed. R. Crim. P. 43(b)(4).

Analysis

As an initial matter, Mr. Slutzkin, the Government, and the Probation Office all agree that the First Step Act applies to Mr. Slutzkin's sentence that the Court imposed on June 26, 2009, because his was a "covered offense" under the First Step Act, meaning that the Court can reduce Mr. Slutzkin's sentence if it finds such a reduction appropriate.  *See* First Step Act Addendum to the Presentence Report, [ECF No. 63 at 3 ("Mr. Slutzkin committed a 'covered offense' under the meaning given that term in the First Step Act.  Therefore, the probation officer believes the Act provides the Court with the authority to impose a reduced sentence on that count, but the Court is not required under the Act to do so.")]; Memorandum in Support of First Step Act Motion, [ECF No. 66 at 3 (noting that the Probation Office concluded that the First Step Act applies to potentially reduce Mr. Slutzkin's sentence)]; Government's Response to Defendant's First Step Act Motion, [ECF No. 65 at 5 ("The Government agrees that Slutzkin's conviction is a 'covered offense' within the meaning of the First Step Act. If sections 2 and 3 of the Fair Sentencing Act had been in place at the time Slutzkin committed the violation, he would have faced lower statutory penalties and a lower Guideline range.")].

The reason that the First Step Act applies to Mr. Slutzkin's situation is because at sentencing, on June 26, 2009, the Court adopted the finding in the

PSR that Mr. Slutzkin's conduct involved 15.7 grams of crack cocaine. This meant that Mr. Slutzkin's conduct fell under 21 U.S.C. § 841(b)(1)(B)(iii), because it involved more than 5 grams of crack cocaine, which at that time required that a five-year mandatory minimum sentence be imposed. But, by retroactively applying the Fair Sentencing Act, which is now allowed by the First Step Act, Mr. Slutzkin's 15.7 grams of crack cocaine now falls below the present day 28-gram threshold, making Mr. Slutzkin's conduct unlawful under 21 U.S.C. § 841(b)(1)(C), which has no mandatory minimum sentence required. By retroactively increasing the threshold crack cocaine levels from 5 to 28 grams, the First Step Act acting in concert with the Fair Sentencing Act, moves Mr. Slutzkin from Subsection B of 21 U.S.C. § 841(b)(1) to Subsection C, erasing the mandatory minimum.

But that's not all. Over the years, due to various amendments to the U.S. Sentencing Guidelines Manual, the recommended sentencing ranges have decreased as well. As explained cogently by the Probation Office in the PSR, while Mr. Slutzkin's criminal history category would remain a V, the same as it was at sentencing, his total offense level would drop from 23 to 17 by operation of the Drug Quantity Table in the U.S. Sentencing Guidelines Manual. *Compare* U.S. Sentencing Guidelines Manual § 2D1.1(c)(8) (2008) (providing a Base Offense Level of 24 for 5 to 20 grams of crack cocaine) *with* U.S. Sentencing Guidelines Manual § 2D1.1(c)(11) (2018) (providing a Base Offense level of 18 for 11.2 to 16.8 grams of crack cocaine). After applying the two-level firearm possession sentencing enhancement and the three-level reduction for acceptance of responsibility in each case, Mr. Slutzkin's Total Offense Level has dropped from

23 to 17.  This means that after crossing the Total Offense Level with the Criminal History Category in the Sentencing Table in the Sentencing Guidelines Manual, Mr. Slutzkin's recommended guideline sentencing range has dropped from 84-105 months to 46-57 months.  *Compare* U.S. Sentencing Guidelines Manual Ch.5 Pt. A (2008) (providing a recommended sentencing range of 84-105 months for Base Offense Level 23 and Criminal History Category V) *with* U.S. Sentencing Guidelines Manual Ch. 5 Pt. A (2018) (providing a recommended sentencing range of 46-57 months for Base Offense Level 17 and Criminal History Category V).

In sum, all concerned agree that Mr. Slutzkin's new recommended sentencing guideline range is 46-57 months with no mandatory minimum.  The Court agrees with that as well.[5]

But that does not settle the matter because "[n]othing in [the First Step Act] shall be construed to require a court to reduce any sentence pursuant to this section."  First Step Act Section 404(c).  Thus, under the First Step Act, the Court is empowered with discretion to determine whether and/or how much to reduce Mr. Slutzkin's sentence, if at all.  Given that discretion, the Court declines to reduce Mr. Slutzkin's sentence for the following reasons.

In passing the Fair Sentencing Act in 2010 and the First Step Act in 2018, Congress' objective was to stop over-penalizing non-violent drug offenders.  The penalties in place prior to 2010, Congress determined, sometimes served to turn some young people, who may have made one unfortunate mistake, after many

---

[5] All concerned also agree that Mr. Slutzkin's minimum duration of supervised release has dropped from four to three years as well by operation of the First Step Act.  The Court also agrees with that.

years of being housed in federal prison, into career criminals. Hence the Fair Sentencing and First Step Act's desire to lower, at a Court's discretion, sentences for individuals who were within Congress' contemplation when passing these statutes.

Mr. Slutzkin does not fall into the category of people that Congress had in mind when it passed the Fair Sentencing and First Step Acts, because he is not a non-violent drug offender, nor did he make one simple mistake. This is clear from his various Presentence Reports and Addenda thereto.

As described above, Mr. Slutzkin's prior criminal history, his actions in committing the instant offense, and his actions in prison clearly demonstrate that Mr. Slutzkin is a violent person with a penchant for criminal activity. First, prior to being charged in this Court, Mr. Slutzkin had four separate state court convictions then resulted in him being sentenced to ten years in state prison. Importantly, his first two convictions, for drug trafficking and for assaulting his girlfriend, carried only suspended sentences with terms of probation, meaning that if Mr. Slutzkin had simply avoided criminal activity, he would have avoided jail time for the rest of his life after his first two serious convictions.

Additionally, Mr. Slutzkin's conduct in regard to the instant offense is especially noteworthy. Intoxicated by a mixture of marijuana, ecstasy, and crack cocaine, Mr. Slutzkin spent the evening of November 2, 2007 out in his truck with a Glock .357 caliber pistol under the hood, consuming crack cocaine, sharing it with his friends, and selling it to willing customers. *See* Presentence Report, [ECF No. 63-2 at 2]; *see also* Transcript of Plea Agreement Hearing at 25 ("The

17

Court: . . . I want to hear from you, in your own words, what you did which leads you to believe that your conduct fits within the four corners of the statute. . . . The Defendant: That night I was driving around. I was using [crack cocaine]. I was giving it to friends and I was also selling it. . . . THE COURT: And did you have a weapon with you? THE DEFENDANT: Yes, ma'am."). Even worse, after he got into an altercation with three young men, Mr. Slutzkin hit one of them with a glancing blow from his truck and retrieved his Glock .357, firing three shots at them, one of which hit their vehicle. Presentence Report, [ECF No. 63-2 at 2-3]. When police responded Mr. Slutzkin led them on a high-speed chase through Middletown, Connecticut, a high-density population area, and ran into some woods in a vain attempt to avoid capture. *Id.* at 3. When he was arrested, Mr. Slutzkin lied and told police that an African-American accomplice that was still at-large had been the one that fired the shots; police found gun powder residue on Mr. Slutzkin's hands. *Id.*

Mr. Slutzkin had also been engaged in providing cocaine in numerous trades for firearms with Thomas Farrugio, and obtained a Glock .45 caliber pistol, a Tomkat .32 caliber pistol, a Smith & Wesson .40 caliber pistol, the Glock .357 caliber pistol that he used on the night of his arrest, a Smith & Wesson .45. caliber pistol, a CZ 9 mm pistol, a Keltec 9 mm pistol, and a Sig Sauer 9 mm pistol. *Id.* at 4-5. In addition, Mr. Slutzkin had over 1,000 rounds of ammunition, a fully loaded pistol drum magazine, and other firearm accessories. *Id.* at 5.

Mr. Slutzkin's behavior once incarcerated is perhaps the greatest concern to the Court. By the Court's count, set forth *supra*, Mr. Slutzkin received 25

disciplinary citations while in state incarceration and six more in federal prison. And most of the citations involved very serious conduct, including fighting, gang affiliation, interfering with safety and security, possession of drugs, and the like. Moreover, as the Government points out in its opposition to Mr. Slutzkin's motion for First Step Act relief, many of Mr. Slutzkin's prison disciplinary infractions occurred while he had motions to reduce his sentence with the Court. [ECF No. 65 at 9-10 (noting that Mr. Slutzkin received three disciplinary citations while his Amendment 782 motion was pending, and several more while his Amendment 750 motion was pending)]. Thus, even when he faced the prospect of obtaining a reduced sentence or outright release from prison, Mr. Slutzkin persisted in engaging in very dangerous conduct in prison, meaning that he lacked the discipline to restrain himself even in the face of possible early release from prison. The Government concludes from this that Mr. Slutzkin's "continued disciplinary citations, together with the offense of conviction and his prior convictions, evidence that a reduction is not warranted given the public safety concerns he presents and his demonstrated lack of respect for the law." *Id.* at 9-10. The Court quite agrees.

There is no need for this Court to conduct a hearing on this motion. A "defendant need not be present" when a court adjudicates a "proceeding involve[ing] the correction or reduction of a sentence under . . . 18 U.S.C. §3582 (c)." Fed. R. Crim. P. 43(b)(4). Here, Mr. Slutzkin's motion is brought under 18 U.S.C. § 3582(c)(1)(B), which provides that "the court may modify an imposed term of imprisonment to the extent otherwise expressly provided by statute . . . ,"

that statute being the First Step Act. Thus, pursuant to Criminal Rule 43(b)(4), no hearing is required.

## Conclusion

Given his prior criminal history, his conduct as concerns the instant offense, and his conduct in prison, Mr. Slutzkin is not entitled to relief. Therefore, Mr. Slutzkin's Motion for Immediate Release or resentencing under the First Step Act, [ECF No. 62], is DENIED.

IT IS SO ORDERED.

                                          /s/
                            Hon. Vanessa L. Bryant
                            United States District Judge

Dated at Hartford, Connecticut: November 4, 2019