**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NUMBER** |
| | : | |
| | : | **3:09-cr-00060 (VLB)** |
| **v.** | : | |
| | : | **JANUARY 8, 2021** |
| **BRIAN SLUTZKIN** | : | |
| | : | |

**MEMORANDUM OF DECISION DENYING**
**MOTION FOR COMPASSIONATE RELEASE, [ECF NO. 97]**

Defendant Brian Slutzkin ("Mr. Slutzkin" or "Defendant") brings this Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that he is statutorily eligible for compassionate release and that a COVID-19 pandemic outbreak at his facility, his efforts at rehabilitation, and his need to care for his elderly parents warrant release at this time. [ECF No. 97 at 1-4].

For the following reasons, Mr. Slutzkin's Motion for Compassionate Release is DENIED.

<u>Background</u>

On March 13, 2009, Mr. Slutzkin appeared in the United States District Court for the District of Connecticut, waived his right to indictment, and, pursuant to a plea agreement, pled guilty to a one-count Information charging him with intent to distribute five grams or more of cocaine base, or crack cocaine, in violation of 21 U.S.C. §§ 84a1(a)(1), (b)(1)(B). [ECF Nos. 1, 3].

In the Plea Agreement, the Parties agreed that Mr. Slutzkin had an adjusted or total offense level of 23 because the amount of narcotics attributable to Mr. Slutzkin was at least 5 grams but less than 20 grams of cocaine base, two levels

should be added because a dangerous weapon was possessed, and three levels should be subtracted for acceptance of responsibility. [ECF No. 3 at 5-6]. The Plea Agreement included a "Stipulation of Offense Conduct" in which the Parties stipulated that Mr. Slutzkin "knowingly and intentionally possessed with the intent to distribute 15.7 grams of . . . cocaine base ('crack'), . . . [and] possessed a dangerous weapon at the time he possessed and intended to distribute cocaine base." *Id.* at 12.

The Presentence Report calculated Mr. Slutzkin's Criminal History Category as V, based on the following offenses:

- An April 25, 2003 conviction in Connecticut Superior Court for the sale of narcotics.[1] [ECF No. 58-2 ¶ 32]. Mr. Slutzkin was sentenced to five years' imprisonment, suspended, and five years' probation. *Id.*

- An October 25, 2007 conviction in Connecticut Superior Court for breach of peace for assaulting his girlfriend by grabbing her throat and throwing her to the floor.[2] *Id.* ¶ 33. Mr. Slutzkin was sentenced to six months' imprisonment, suspended, and 18 months' conditional discharge. *Id.*

---

[1] The narrative for this conviction notes that Mr. Slutzkin resisted arrest and was incarcerated from July 12, 2002 until November 7, 2002, during which time he received two prison disciplinary infractions, one for fighting and one for threats. [ECF No. 58-2 ¶ 32].

[2] The narrative section for this conviction notes that the victim had a bruised neck and a bump on her head. *Id.* ¶ 33. It also notes that when interviewed Mr. Slutzkin yelled at the interviewing officer and lied, saying he had never assaulted his girlfriend. *Id.*

- A December 18, 2008 conviction in Connecticut Superior Court for having a weapon in a motor vehicle.[3]  *Id.* ¶ 34.  Mr. Slutzkin was sentenced to one years' imprisonment, to run concurrently with the following conviction.  *Id.*

- A separate December 18, 2008 conviction in Connecticut Superior Court for two counts of assault in the first degree and for having a pistol with no permit.  *Id.* ¶ 35.[4]  Mr. Slutzkin was sentenced to 10 years' imprisonment on each count of assault, and two years' imprisonment on the weapon charge, all sentences to run concurrently.  *Id.*

These offenses led to eight Guideline criminal history points, and two points were added because Mr. Slutzkin was on probation when he was arrested for the federal offense.  *Id.*  ¶ 36.  This placed Mr. slutkin in criminal history category V, *id.*, which when combined with a total offense level of 23, *id.* ¶ 67, resulted in a recommended Sentencing Guideline range of 84-105 months, *id.*, with a mandatory minimum sentence of 60 months, *id.* ¶ 66, and a minimum of four years of supervised release, *id.* ¶ 69, to run concurrently or consecutively to Mr. Slutzkin's December 18, 2008 state sentence at the Court's discretion.  *Id.*

---

[3] The narrative for this conviction notes that when he was arrested by police on July 6, 2006, they found marijuana and a semi-automatic pistol.  *Id.* ¶ 34.

[4] The narrative for this conviction notes that the events leading to these convictions, namely a shooting while distributing drugs that occurred on November 2, 2007, are the same ones that form the basis for Mr. Slutzkin's federal criminal charges.  ¶ 35.  These events are described in more detail, *infra*.  It also notes once Mr. Slutzkin was incarcerated the same day as the shooting after his arrest and for violating probation, he was transferred to Northern Correctional Institution due to gang affiliation.  *Id.*  He also received disciplinary infractions for gang affiliation (twice), interfering with safety and security, and fighting prior to sentencing by the Court.  *Id.* ¶ 32.

On June 26, 2009, at sentencing, the Court imposed sentence of 84 months' imprisonment to run consecutively to Mr. Slutzkin's state sentence, and five years' supervised release.  [ECF Nos. 18, 19].

On July 6, 2009, Mr. Slutzkin filed a timely notice of appeal.  [ECF No. 20]. On appeal, Mr. Slutzkin argued that "(1) it was error to add three criminal history points for the December 2008 state sentence pursuant to U.S.S.G. § 4A1.1(a); (2) it was error to add two criminal history points for commission of the instant federal offense while on probation pursuant to U.S.S.G. § 4A1.1(d); and (3) the district court improperly imposed consecutive, rather than concurrent, sentences pursuant to U.S.S.G. § 5G1.3."  *United States v. Slutzkin*, 382 F. App'x 65, 67 (2d Cir. 2010).  The Second Circuit, via Summary Order, "reject[ed] all of Slutzkin's arguments and affirm[ed] the judgment of the district court."  *Id.*

On December 17, 2014, Mr. Slutzkin filed a civil habeas petition under 28 U.S.C. § 2255.  No. 14-cv-01889 (VLB), [ECF No. 1].  In his Petition, Mr. Slutzkin requested that the Court apply a two-point reduction to his sentence based on Amendment 782 to the United States Sentencing Guidelines.  *Id.* at 6 ("On Nov 1st 2014 a 2-pt reduction was applied to all federal drug offenses.").

On April 15, 2015, Mr. Slutzkin filed a motion requesting the same relief in this case.  No. 3:09-cr-00060 (VLB), [ECF No. 43].  In that motion, Mr. Slutzkin requested that "the Court enter an amended judgment in his case pursuant to 18 U.S.C. § 3582(c)(2) as it implements Amendment 782 to the United States Sentencing Guidelines.  Specifically, Mr. Slutzkin asks this Court to reduce his sentence of imprisonment from 84 months to 60 months."  *Id.* at 1.

4

On July 20, 2015, the Court denied Mr. Slutzkin's civil habeas petition as moot in light of his motion for the exact same relief in this case.  No. 14-cv-01889 (VLB), [ECF No. 4 ("Petitioner's motion to vacate seeks a two point reduction in his sentence based on Amendment 782 to the United States Sentencing Guidelines. *See* [Dkt. #1 at 6]. On April 15, 2015, Petitioner filed a motion seeking the exact same relief in the related matter, *U.S. v. Slutzkin*, No. 09-CR-60 (VLB) (D. Conn. filed Mar. 9, 2009). *See* [Dkt. #43]. As Petitioner's motion in that earlier-filed case is presently pending, Petitioner's motions in this separate action are wholly duplicative, and the action is therefore dismissed.")].

The Probation Office's "Amendment 782 Addendum to the Presentence Report" noted that since his federal sentencing in June 2009, Mr. Slutzkin received the following disciplinary citations and sanctions while in state incarceration:

- "8/25/2014, SRG Affiliation, 15 days punitive segregation, loss of community and telephone privileges for 45 days, loss of recreation for 10 days;"

- "7/30/2014, SRG Affiliation, 7 days punitive segregation, loss of community and telephone privileges for 30 days, loss of recreation for 10 days;"

- "3/4/2014, SRG Affiliation, 6 days punitive segregation, loss of recreation for 6 days, loss of social visiting and social correspondence privileges for 20 days;"

- "8/28/2013, Security Tampering, loss of recreation for 10 days, loss of community and social correspondence privileges for 15 days;"

- "7/23/2013, SRG Affiliation, 7 days punitive segregation, loss of recreation for 10 days, loss of social visiting and social correspondence privileges for 30 days;"

- "6/6/2013, Flagrant Disobedience, 1 day in punitive segregation and loss of recreation for 10 days;"

- "5/31/2013, Interfering with Safety/Security of Institution, 7 days in punitive segregation, loss of recreation for 10 days, loss of social visiting and community privileges for 30 days;"

- "1/29/2013, SRG Affiliation, 15 days in punitive segregation, loss of recreation for 10 days, loss of social visiting privileges for 60 days, loss of community privileges for 90 days;"

- "1/9/2013, Fighting, 7 days punitive segregation, loss of recreation for 10 days, loss of community and social correspondence privileges for 30 days;"

- "12/30/2012, Fighting, 7 days punitive segregation, loss of recreation for 10 days, loss of community and social visiting privileges for 30 days;"

- "4/27/2012, Class B Contraband, loss of recreation for 5 days, confined to unit for 15 days; and"

- "4/9/2010, SRG Safety Threat, 7 days in punitive segregation, loss of social visiting and community privileges for 30 days."

No. 3:09-cr-00060 (VLB), [ECF No. 35].

On July 23, 2015, the Court recalculated Mr. Slutzkin's sentencing guideline range to 60 months, based on the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(B), *id.* [ECF Nos. 45, 51], but denied Mr. Slutzkin's motion to reduce his Sentence pursuant to Amendment 782.  *Id.* [ECF Nos. 45, 51 ("When applying the factors listed in 18 USC 3553(a) to determine whether to reduce the defendant's original sentence the Court may consider post-sentencing conduct. The defendant's behavior in prison demonstrates a continued need to protect the public and a lack of respect for the law.")].

On August 6, 2015, Mr. Slutzkin filed a timely notice of appeal.  *Id.* [ECF No. 47].  In his appeal brief Mr. Slutzkin argued that "[g]iven that the same judge had previously sentenced Mr. Slutzkin to the bottom end of the then-applicable Guidelines range, this refusal to grant any relief whatsoever, leaving in place what is now an above-Guidelines sentence is inexplicable and unjustified."  Brief of Appellant at 8, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Nov. 13, 2015).

On January 25, 2016, Mr. Slutzkin's counsel, Federal Public Defender Dierdre A. Murray, filed a motion to withdraw Mr. Slutzkin's principal brief and to file a brief in support of her motion to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), because after reviewing the Court's Statement of Reasons supporting the Court's denial of Amendment 782 relief, No. 3:09-cr-00060 (VLB), [ECF No. 51], dated December 2, 2015, which was not available when she filed Mr. Slutzkin's original appeal brief, Attorney Murray "determined that no non-frivolous grounds for appeal remain."  Motion to Withdraw at 1, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Jan. 25, 2016).  The next day the Second Circuit

granted Attorney Murray's motion.  *Id.*, [ECF No. 45].  Following that, Attorney Murray filed an "*Anders* Brief" arguing that "the issues potentially presented for appellate review [we]re without merit and [we]re frivolous."  Brief of Counsel for Appellant in Support of Motion to Withdraw at 7, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Jan. 27, 2016).

On April 27, 2016, the Government moved for summary affirmance, arguing that "[t]he government agrees with Slutzkin's counsel's conclusion that there are no non-frivolous issues remaining for Slutzkin to pursue on appeal," and that "the district court (1) appropriately determined that Slutzkin was eligible for a sentence reduction, (2) acted well within its discretion in denying such a reduction, and (3) provided an adequate explanation for that denial."  Brief of Appellee at 4-5, *United States v. Slutzkin*, No. 15-2524 (2d Cir. Apr. 27, 2016).

On July 7, 2016, the Second Circuit, via a one-page Order, granted Attorney Murray's Motion to Withdraw and granted the Government's Motion for Summary Affirmance.  *Id.* [ECF No. 71 ("Deirdre A. Murray, counsel for Appellant, moves for permission to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the Government moves for summary affirmance.  Upon due consideration, it is hereby ORDERED that the motions are GRANTED.")].  The Second Circuit also denied Mr. Slutzkin's follow-on motion for reconsideration, *id.* [ECF No. 83], and his follow-on motion for rehearing *en banc.  Id.* [ECF No. 88].

Mr. Slutzkin filed a second habeas petition seeking a sentence reduction on March 6, 2018.  No. 3:14-cv-01889 (VLB), [ECF No. 5].  In that petition, Mr. Slutzkin argued that his sentence should be vacated, set aside, or corrected because the

Court improperly applied a two-point sentencing enhancement for possession of a firearm pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(b)(1). Alternatively, Mr. Slutzkin argued that the Court should vacate his sentence due to ineffective assistance of counsel before the district court, in that his sentencing counsel's failure to adequately challenge the imposition of the firearm enhancement was improper. *Id.* at 4-8.

On August 3, 2018, in this case, Mr. Slutzkin filed a Motion to Reduce Sentence pursuant to Amendment 750 of the Sentencing Guidelines. No. 3:09-cr-00060 (VLB), [ECF No. 56].

In its "Amendment 750 Addendum to the Presentence Report," the Probation Office determined that Mr. Slutzkin was not eligible for a sentence reduction because such a reduction was "not authorized" unless it "ha[d] the effect of lowering the defendant's applicable guideline range," which Amendment 750 did not because "Mr. Slutzkin already received the benefit of consideration of an Amendment 750 reduction because it was encompassed within the guidelines calculated during consideration of his Amendment 782 request." [ECF No. 58 at 4-5]. The Probation office also noted that in addition to the prison disciplinary infractions detailed in its Amendment 782 Addendum to the Presentence Report, Mr. Slutzkin received the following disciplinary citations and sanctions during state incarceration:

- "7/7/2015, Security Tampering, 10 days' punitive segregation, loss of telephone and social visit privileges for 30 days, loss of recreation for 10 days"

- **"7/7/2015, Disobey Direct Order, 5 days' punitive segregation, loss of telephone privileges for 30 days, loss of recreation for 5 days"**

- **"7/18/2015, Conspiracy to Commit Assault, 7 days' punitive segregation, loss of social visits and commissary privileges for 30 days, loss of recreation for 10 days"**

- **"8/4/2015, SRG Affiliation, 7 days' punitive segregation, loss of social visits for 40 days, loss of commissary privileges for 20 days and loss of recreation for 10 days"**

- **"10/8/2015, SRG Affiliation, 7 days' punitive segregation, loss of commissary privileges for 30 days, loss of social correspondence privileges for 15 days and loss of recreation for 10 days"** and

- **"10/22/2015, Security Tampering, 4 days' punitive segregation, loss of telephone privileges for 30 days, loss of recreation for 10 days."**

*Id.* **[ECF No. 58 at 3-4].**

**The PSR Addendum also noted that on November 4, 2015, Mr. Slutzkin completed his state imprisonment and "was released to federal authorities." *Id.* at 2.   While in federal prison, Mr. Slutzkin received the following additional disciplinary citations and sanctions:**

- **"9/7/2017, Mail Abuse/Disrupt Monitoring, loss of 27 days' good conduct time, 15 days' disciplinary segregation, loss of email for 3 months"**

- **"9/7/2017, Giving/Accepting Money without Authorization, loss of 14 days' good conduct time and loss of commissary privileges for 2 months"**

- "2/22/2018, Being Absent from Assignment, loss of commissary privileges for 30 days" and

- "4/9/2018, Possession of Drugs/Alcohol, loss of 41 days good conduct time, 20 days' disciplinary segregation and loss of phone and email privileges for 4 months.  .  .  .  Records note that [the] drugs [were], specifically suboxone and amphetamine."

*Id.* [ECF No. 58 at 4].

The Government agreed that Mr. Slutzkin was not eligible for a sentence reduction pursuant to Amendment 750, and also argued that "the defendant's continued disciplinary citations, together with the offense of conviction and his prior convictions, evidence that a reduction is not warranted given the public safety concerns he presents and his demonstrated lack of respect for the law." *Id.* [ECF No. 59 at 6].

On April 11, 2019, Mr. Slutzkin also filed a Motion for Immediate Release or Re-Sentencing under the First Step Act.  *Id.* [ECF No. 62].  Regarding this motion, the Probation Office filed a "First Step Act of 2018 Addendum to the Presentence Report."  *Id.* [ECF No. 63].  In the Addendum, the Probation Office, in addition to the prison disciplinary infractions noted previously, noted that Mr. Slutzkin had received the following additional disciplinary citations and sanctions:

- "12/1/2018, Destr[uction of] Property $100 or Less, loss of commissary for 30 days"

- "11/24/2018, Destr[uction of] Property $100 or Less (Cut mattress), loss of email for 15 days."

*Id.* [ECF No. 63 at 5].

On October 9, 2019, the Court denied Mr. Slutzkin's Motion to Reduce Sentence pursuant to Amendment 750 of the Sentencing Guidelines. *Id.* [ECF Nos. 67, 68]. The Court found that Mr. Slutzkin was not eligible for a sentence reduction because Amendment 750 did not have the effect of lowering his sentencing guideline range, and found that "[e]ven if Defendant was eligible for a sentence reduction based on Amendment 750, the Court would still DENY Defendant's petition because the number and severity of the disciplinary infractions Defendant has committed in prison since my previous Order on sentence reduction, Dkts. 45, 51, demonstrates a continued need to protect the public and a lack of respect for the law. 18 U.S.C. Sections 3553(a)(2)(A) 3553(a)(2)(C)." [ECF No. 68].

On October 15, 2019, the Court also denied Mr. Slutzkin's second habeas petition, finding that Mr. Slutzkin's "two-level firearm sentencing enhancement was entirely proper," given that Mr. Slutzkin admitted at his plea hearing that he had a firearm in his possession when he was arrested. No. 14-cv-01889 (VLB), [ECF No. 11 at 12-13]. The Court also held that because the firearm sentencing enhancement was proper, Mr. Slutzkin's sentencing counsel could not have been constitutionally ineffective for failing to object to it. *Id.* at 13.

On November 4, 2019, the Court denied Mr. Slutzkin's Motion for Immediate Release or Re-Sentencing under the First Step Act. No. 9-cr-00060 (VLB), [ECF No. 72]. The Court found that Mr. Slutzkin's was a "covered offense" under the First Step Act, *id.* at 14-16, but noted "that [this] does not settle the matter

because '[n]othing in [the First Step Act] shall be construed to require a court to reduce any sentence pursuant to this section.'" *Id.* at 16 (quoting First Step Act Section 404(c)).

The Court denied Mr. Slutzkin's First Step Act motion because "Mr. Slutzkin's prior criminal history, his actions in committing the instant offense, and his actions in prison clearly demonstrate that Mr. Slutzkin is a violent person with a penchant for criminal activity," *id.* at 17, which meant that "Mr. Slutzkin's continued disciplinary citations, together with the offense of conviction and his prior convictions, evidence that a reduction is not warranted given the public safety concerns he presents and his demonstrated lack of respect for the law." *Id.* at 19.

On December 6, 2019, Mr. Slutzkin appealed both the Court's Order denying his Motion to Reduce Sentence under Amendment 750 and his First Step Act Motion, [ECF Nos. 85, 86], as well as the Court's denial of his habeas motion based on the two-level firearm sentencing enhancement.  No. 14-cv-01889 (VLB), [ECF No. 15].

On September 18, 2020, the Second Circuit dismissed Mr. Slutzkin's appeal of the Court's denial of his motion for habeas relief because "Appellant has not 'made a substantial showing of the denial of a constitutional right.'" *Slutzkin Bongiorno v. United States*, No. 19-4081, [ECF No. 53] (2d Cir. Sept. 18, 2020) (quoting 28 U.S.C. § 2253(c) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  Mr. Slutzkin's appeals of the Court's Order denying his Motion to Reduce Sentence under Amendment 750 and his First Step Act Motion remain pending.

*United States v. Slutzkin*, No. 19-4163 (2d Cir. Dec. 10, 2019); *United States v. Slutzkin*, No. 19-4165 (2d Cir. Dec. 10, 2019).

On September 20, 2020, Mr. Slutzkin filed an "Inmate Request for Compassionate Release" at United States Penitentiary Thomson where he is housed.  [ECF No. 99-2].  In the Request, Mr. Slutzkin argued that extraordinary or compelling circumstances existed making his release appropriate because the COVID situation in the state and his facility had deteriorated recently, he had been infraction-free for over a year, he was sentenced on a "non-violent charge," and his family needed him.  *Id.*  Although the Warden's response is not in the record, Mr. Slutzkin's request was denied and he remains incarcerated.  *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/.

On November 30, 2020, Mr. Slutzkin filed the instant *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that he is statutorily eligible for compassionate release and that a COVID-19 pandemic outbreak at his facility, his efforts at rehabilitation, and his need to care for his elderly parents warrant release at this time.  [ECF No. 97 at 1-4].

On December 4, 2020, the Government opposed Mr. Slutzkin's Motion for Compassionate Release, arguing that Mr. Slutzkin has no medical conditions whatsoever that might increase his risk from contracting the COVID-19 virus, and arguing that Mr. Slutzkin's behavior while incarcerated continues to show that he is a danger to the community.  [ECF No. 99].  Specifically, the Government appends at Exhibit B a listing of the disciplinary infractions Mr. Slutzkin has been

convicted of since Probation's latest PSR Supplement detailing Mr. Slutzkin's 2018 infractions.  They are:

- "6-23-2019: Phone abuse-disrupt monitoring: [Inmate] had fictitious names on contact list"

- "7-2-2019: Possessing drugs/alcohol: Suboxone was found in propert[y] and locker belonging to Slutzkin"

- "7-15-2019: Disruptive Conduct-High: [Inmate] placed lien on staff members homes in exchange for favor"

- "8-1-2019: Extorting/Blackmail/Protecting: [Inmate] is attempting to extort staff member through UCC / Sovereign Citizen documents"

- "9-26-2019: Being insolent to staff member: [Inmate] was insolent towards staff"

[ECF No. 99-1 at 1-5].

On December 18, 2020, Defendant, through counsel, filed a Supplemental Memorandum in aid of Mr. Slutzkin's *pro se* Motion for Compassionate Release. [ECF No. 106].  In the Supplemental Memorandum, Mr. Slutzkin argues that he should be granted compassionate release because (1) he has served approximately 77% of his sentence, (2) he has not committed any disciplinary infractions in over a year, (3) he has completed many educational activities while incarcerated, (4) he has a good release plan living with his girlfriend, (5) he needs to care for his elderly parents, (6) courts recently have looked to more than a defendant's medical condition to find extraordinary and compelling reasons for release, and (7) he was convicted of a non-violent crime. *Id.*

## Legal Standard

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i)).  18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Where this exhaustion requirement is met, the Second Circuit has held that district courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement.  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

A court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A). Therefore, in deciding a compassionate release motion, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and

providing the defendant with rehabilitation.  *See* 18 U.S.C. § 3553(a).  In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13 (2); *see also United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304 (D. Conn. Sept. 29, 2020).

"The defendant bears the burden of showing that []he is entitled to a sentence reduction."  *United States v. Gagne*, No. 3:18-cr-00242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020).  Under Federal Rule of Criminal Procedure 43, a "defendant need not be present" when a court adjudicates a "proceeding involve[ing] the correction or reduction of a sentence under  . . . 18 U.S.C. §3582 (c)."  Fed. R. Crim. P. 43(b)(4).

<u>Analysis</u>

As an initial matter, the Parties agree that Mr. Slutzkin has appropriately exhausted his administrative remedies.  "[T]he Government has obtained documentation from the facility evidencing that the defendant requested compassionate release in September 2020.  Gov. Ex. C.  Accordingly, the Government concedes that the motion is properly before the Court."  [ECF No. 99 at 5].  The Court agrees but denies Mr. Slutzkin's motion for the following reasons.

First, Mr. Slutzkin does not have a medical condition that places him at increased risk should he contract the COVID-19 virus.  In his *pro se* motion for compassionate release, Mr. Slutzkin does not argue that he does.  *See* [ECF No. 97].  In his counseled supplemental motion, Mr. Slutzkin states that he "has had

health issues with a particular vulnerability to Covid-19," noting that there is a June 8, 2017 medical record entry for chronic care for unspecified reasons. [ECF No. 106 at 4]. But Mr. Slutzkin does not cite to nor provide the medical record referenced in his supplemental motion and concedes that "fortunately he has not had severe issues which [have] compromised him." *Id.* The Court has conducted a searching review of Mr. Slutzkin's sealed medical records and has found no medical condition that in any way might increase his susceptibility to increased risk should he contract COVID-19. For this reason, the Court concludes that Slutzkin has failed to sustain his burden of showing there are extraordinary and compelling reasons militating in favor of his release, especially considering that he is young, at 36 years of age, which the statistics show reduces his medical risks from contracting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (noting that eight of 10 COVID deaths in the United States have been in adults 65 years old and older).

Mr. Slutzkin argues that even if that is true, "more recent decisions have spread the focus beyond inmate's personal health situations to more broad based issues," such as "inmates' close family needs for support during the pandemic, the proximity to the end of incarceration, the anxiety brought on by the pandemic and the increased spread at the inmates [sic] jail." [ECF No. 106 at 3-4 (citing *United States v. Rodriguez*, No. 1:00-cr-00761-JSR-2, 2020 WL 5810161 (S.D.N.Y. Sept. 30, 2020) and *United States v. Wooten*, No. 3:13-cr-00018 (SRU), 2020 WL 6119321 (D. Conn. Oct. 16, 2020)]. Mr. Slutzkin notes that "[t]he Courts have also given weight to the inmate's efforts toward rehabilitation although

rehabilitation alone cannot be the reason for a favorable compassionate release decision."  [ECF No. 106 at 4].

The problem for Mr. Slutzkin is that the cases he cites are a far cry from this case.  In *Rodriguez*, the Defendant was 57 years old, "clinically obese," and suffered from Type-II diabetes mellitus, which the Government in that case conceded "satistf[ied] the extraordinary and compelling reason threshold."  2020 WL 5810161, at *3.  Second, there was "overwhelming evidence of Rodriguez's total rehabilitation," including 27 letters from prison officials testifying to Rodriguez's "remarkable" turnaround, which "weigh[ed] strongly in favor of a finding of extraordinary and compelling reasons."  *Id.* at *4.  Third, Rodriguez had also "compiled an outstanding employment record throughout his twenty years in prison," and "served on the Suicide Watch Companion Team, to which he was selected based on his demonstration of maturity, responsibility and commitment to the well-being of fellow inmates."  *Id.*  For these reasons, Judge Rakoff had little trouble finding that "this overwhelming evidence of, not just rehabilitation, but transformation, weighs in favor of a finding that extraordinary and compelling reasons exist to modify Rodriguez's sentence.  That Rodriguez has developed such an outstanding record in prison without any tangible incentive other than self-improvement, given that his life sentence meant that he could neither earn any 'good time' credit nor receive any other sentence reduction benefit weighs all the more strongly still."  *Id.* at *5.

Mr. Slutzkin's case is almost the opposite.  Mr. Slutzkin, as noted, suffers from no medical condition that might increase his risk of complications if he

contracted COVID-19.  Second, Mr. Slutzkin's record in prison has been atrocious for over a decade.  The record is replete with Mr. Slutzkin's numerous prison infractions, including possession of drugs as recently as July 2019.  Other infractions have been for gang affiliation, fighting, security tampering, and other very serious threats to safety and security in prison and against prison officials.  In sum, Mr. Slutzkin has no risk-inducing medical conditions and has not been a model inmate.  Far from it.

Mr. Slutzkin's cited *Wooten* case fares no better.  There, Chief Judge Underhill granted Defendant's motion for release, but only because the Defendant was the sole caregiver for close family members, his rehabilitation had been "total," as he had not amassed even one disciplinary "ticket" while incarcerated, and his release to a halfway house was only three months away.  2020 WL 6119321, at *7-8.

Mr. Slutzkin's argument that courts have looked to factors apart from medical risk to find "extraordinary and compelling circumstances" warranting release is well taken, but those factors are not strongly in Mr. Slutzkin's favor in this case, if at all.  He claims he is needed to care for his aged parents.  It would not appear they need him to care for them because he proposes to live with his girlfriend.  Mr. Slutzkin fails to present evidence of "extraordinary and compelling reasons" warranting his release.

Mr. Slutzkin also argues that USP Thomson, where he is housed, has suffered a COVID-19 "outbreak" that "has been one of the largest in the federal system."  [ECF No. 106 at 4].  But the Court notes that there are currently only 13

inmates who are positive for COVID-19 out of an inmate population of 1,343, for a 0.97% infection rate, well below the State of Connecticut infection rate and suggesting prison officials are doing a good job protecting inmates from infection. *see* https://www.bop.gov/coronavirus/index.jsp.   There have been no inmate or staff deaths from COVID-19, suggesting that USP Thomson is adequately treating those that are infected.   The Government reports that "Thomson USP is following the BOP's COVID-19 Modified Operations Plan that includes a number of procedures designed to limit the virus' spread, including requiring that all inmates be secured in their assigned cells/quarters, restricting visits, and limiting group gathering with attention to social distancing to the extent possible to facilitate commissary, laundry, showers, telephone, and computer access," [ECF No. 99 at 2], which, again, suggests that USP Thomson is doing its best to cope with the COVID-19 pandemic.   In sum, conditions at Mr. Slutzkin's facility do not move the Court to find "extraordinary and compelling reasons" warranting his release.

The Court also pauses to note that in both his *pro se* Motion for Release, [ECF No. 97 at 1], and in his counseled supplemental memorandum, [ECF No. 106 at 2], Mr. Slutzkin characterizes the instant crack cocaine distribution offense as "non-violent."   But even overlooking the severe damage, which invariably includes drug overdose deaths, which such conduct causes, the instant offense involved a two-level increase in offense level for possession of a dangerous weapon, namely, a .357 caliber handgun.   [ECF No. 26-2 at 7].   And, more importantly, as the Court described in its Order denying Mr. Slutzkin's Motion for

Sentence Reduction under the First Step Act, Mr. Slutzkin's conduct as regards the instant offense *was* violent:

> Intoxicated by a mixture of marijuana, ecstasy, and crack cocaine, Mr. Slutzkin spent the evening of November 2, 2007 out in his truck with a Glock .357 caliber pistol under the hood, consuming crack cocaine, sharing it with his friends, and selling it to willing customers. . . . Even worse, after he got into an altercation with three young men, Mr. Slutzkin hit one of them with a glancing blow from his truck and retrieved his Glock .357, firing three shots at them, one of which hit their vehicle. Presentence Report, [ECF No. 63-2 at 2-3]. When police responded Mr. Slutzkin led them on a high-speed chase through Middletown, Connecticut, a high-density population area, and ran into some woods in a vain attempt to avoid capture. *Id.* at 3. When he was arrested, Mr. Slutzkin lied and told police that an African-American accomplice that was still at-large had been the one that fired the shots; police found gun powder residue on Mr. Slutzkin's hands. *Id.*

*United States v. Slutzkin*, No. 3:09-cr-00060 (VLB), 2019 WL 5696122, at *8 (D. Conn. Nov. 4, 2019).

Mr. Slutzkin falsely implicated another person playing a potentially deadly race card.  He intended to deflect suspicion from himself by sending police on a manhunt for an armed and dangerous African-American male, placing many innocent people in mortal danger.

Mr. Slutzkin's offense conduct did involve the use of violence.  Striking a person with a motor vehicle or a firearm, and sicking police on a community of innocent people in search of an armed and dangerous person each constitutes a violent act because each involves the use of extremely harsh or destructive force capable of causing injury or death.

Because of this egregious, violent conduct, because of Mr. Slutzkin's extensive criminal history, which includes prior convictions for drug distribution

and crimes of violence, including assault, and because of Mr. Slutzkin's history of committing dozens of offenses while incarcerated, including as noted, gang affiliation, fighting, and interfering with safety and security, the Court finds that no "extraordinary and compelling reasons" militate in favor of releasing him and Mr. Slutzkin remains a danger to the community.  18 U.S.C. § 3142(g).

As stated above, Mr. Slutzkin's appeals of the Court's Order denying his Motion to Reduce Sentence under Amendment 750 and his First Step Act Motion remain pending.  *United States v. Slutzkin*, No. 19-4163 (2d Cir. Dec. 10, 2019); *United States v. Slutzkin*, No. 19-4165 (2d Cir. Dec. 10, 2019).  Courts in this jurisdiction have found that an appeal from a sentence divests the court of jurisdiction to grant motions for compassionate release.  *United States v. Mack*, 460 F. Supp. 3d 301, 302 (2020); *United States v. Morris*, No. 11-cr-912, 2020 WL 6781063, *2–3 (S.D.N.Y. Nov. 18, 2020); *United States v. Rosario*, No. 09-cr-415, 2020 WL 3100461, at *1 (S.D.N.Y. June 11, 2020); *United States v. Skelos*, No. 15-cr-317, 2020 WL 2508739, at *1 (S.D.N.Y. May 15, 2020).  With that said, the Court may still review the merits of the motion and either "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Crim. P. 37(a).

<u>Conclusion</u>

There is no need for this Court to conduct a hearing on this motion.  A "defendant need not be present" when a court adjudicates a "proceeding involv[ing] the correction or reduction of a sentence under  . . . 18 U.S.C. §3582

(c)." Fed. R. Crim. P. 43(b)(4).  Here, Mr. Slutzkin's motion is brought under 18 U.S.C. § 3582(c)(1)(A).  [ECF No. 106 at 1].

Given his lack of any medical condition that might indicate an increased risk to his health should he contract COVID-19, his prior criminal history, his conduct as concerns the instant offense, and his conduct in prison, Mr. Slutzkin is not entitled to relief.  Therefore, Mr. Slutzkin's Motion for Compassionate Release, [ECF No. 97], is DENIED.  Fed. R. Crim. P. 37(a)(2).

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: January 8, 2021